UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| FEDERAL NATIONAL MORTGAGE ASSOCIATION and SETERUS, INC., | ) ) ) | |
|---|---|---|
| *Defendants/Appellants*, | ) ) | Case No. 1:17-cv-357 |
| v. | ) ) | Judge Curtis L. Collier |
| JOSEPH C. CAWOOD, | ) ) | |
| *Plaintiff/Appellee*. | ) | |

# **M E M O R A N D U M**

This matter comes before the Court from the Bankruptcy Court. Defendants/Appellants, Federal National Mortgage Association ("FNMA") and Seterus, Inc. ("Seterus"; collectively with FNMA, "Defendants"), object to the Bankruptcy Court's proposed findings of fact and conclusions of law on their motions to dismiss the adversary proceeding filed against them by Plaintiff/Appellee, Joseph C. Cawood. For the reasons stated herein, the Court will **ACCEPT** the Bankruptcy Court's proposed findings of fact and conclusions of law, **DENY** Seterus's motion to dismiss, **GRANT IN PART** and **DENY IN PART** FNMA's motion to dismiss, **DISMISS** Count Six of Plaintiff's Amended Complaint against FNMA, and **REMAND** the case to the Bankruptcy Court for further proceedings consistent with this opinion.

## **I.  BACKGROUND**

Defendants do not object to the Bankruptcy Court's explanation of Plaintiff's factual allegations for the purposes of Defendants' motion to dismiss. The Court accordingly adopts

Section One of the Bankruptcy Court's Memorandum Opinion by reference and provides only a brief summary of the background here.

### A. Factual Background

Plaintiff bought a house in Cleveland, Tennessee, in 2004, obtaining a loan from SunTrust Mortgage, Inc. ("SunTrust"). The loan was secured by a deed of trust.

Plaintiff moved to Texas. He fell behind on his loan payments in 2008, and SunTrust instituted foreclosure proceedings. Plaintiff filed a voluntary Chapter 13 bankruptcy petition (the "Texas Case") in the Bankruptcy Court for the Southern District of Texas (the "Texas Court") on May 12, 2008, to stop the foreclosure. The Texas Case was completed on May 31, 2013. The Texas Court granted the trustee's June 2013 motion deeming the mortgage current and directing Plaintiff to make future loan payments directly to SunTrust. Plaintiff received a discharge from the Texas Court on July 8, 2013.

Plaintiff made loan payments to SunTrust for June, July, August, and September 2013. In October 2013, Seterus sent Plaintiff a letter informing him that Seterus had become the servicer of the loan on behalf of FNMA. The letter stated that there was unpaid interest of $2,591.62 and an escrow overdraft of $745.33 on the loan. Seterus also returned Plaintiff's September payment. Plaintiff made his October 2013 payment to Seterus as instructed. He also retained counsel, who wrote to Seterus in November 2013, resubmitting Plaintiff's September 2013 payment and enclosing a copy of the order from the Texas Case deeming the loan current.

Between October 2013 and August 2014, certain patterns repeated. Plaintiff submitted all of his payments to Seterus, Seterus returned certain payments, and Plaintiff resubmitted them. Seterus sent multiple letters to Plaintiff claiming the loan was in default and discussing new

payment amounts, a possible loan modification, and the institution of foreclosure proceedings. Plaintiff's counsel sent multiple letters telling Seterus to check the records from the Texas Case, asserting that Plaintiff had made all of his payments since the Texas Case on time, and asserting that foreclosure would violate the orders of the Texas Court. Seterus responded with letters saying the matter was under investigation.

Foreclosure was scheduled and advertised for August 14, 2014. In order to stop the sale, Plaintiff filed a Chapter 13 petition on August 12, 2014, in the Bankruptcy Court for the Eastern District of Tennessee, to which Petitioner had returned. Seterus filed an objection to confirmation on the grounds that Plaintiff's plan did not account for arrearages to Seterus of more than $7,000.

B. **Procedural History**

Plaintiff filed this adversary proceeding on August 11, 2015, against FNMA, Seterus, SunTrust, and other entities allegedly involved in the planned foreclosure. His First Amended Complaint (the "Complaint") seeks individual and class-action relief. He asserts causes of action for (1) an objection to Seterus's claim; (2) breach of contract; (3) intentional or negligent misrepresentation; (4) negligence; (5) failure to credit payments in violation of 15 U.S.C. § 1639f; and (6) violation of the Fair Debt Collection Practices Act (the "FDCPA").

Seterus and FNMA each filed a motion to dismiss on July 8, 2016. Seterus argued the Bankruptcy Court lacks subject matter jurisdiction over all of Plaintiff's claims for individual relief because they are attempts to enforce the discharge injunction from the Texas Case, and a contempt action for violation of a discharge injunction can only be heard in the court that issued the injunction. Similarly, Seterus argued for dismissal of the class-action claims as attempts to enforce discharge injunctions of other courts. In the alternative, it argued the Complaint fails to state valid

3

claims for relief under Rule 12(b)(6) of the Federal Rules of Civil Procedure. FNMA's motion sought dismissal on the grounds that the Complaint does not contain any factual allegations of misconduct by FNMA. In the alternative, FNMA adopted Seterus's arguments for dismissal. The Bankruptcy Court heard oral argument on the motions to dismiss on September 20, 2016.

The Bankruptcy Court issued a Memorandum Opinion and Order on September 29, 2017, which constitute the Bankruptcy Court's proposed findings of fact and conclusions of law for this Court's review.[1] *See* Fed. R. Bankr. P. 7012(b); 28 U.S.C. § 157(c)(1). The Bankruptcy Court first addressed Defendants' challenge to subject-matter jurisdiction based on the discharge injunction in the Texas Case. (Op. at 10–14.) The Bankruptcy Court acknowledged the correctness of Defendants' position that only a court that issues a discharge injunction may punish a violation of that injunction. (*Id.* at 10.) It concluded, however, that a discharge injunction was not at issue in Plaintiff's Complaint, because Plaintiff's debt to SunTrust was not discharged in the Texas Case. (*Id.* at 11–14 (quoting *Perry v. EMC Mortgage Corp.*, 388 B.R. 330 (Bankr. E.D. Tenn. 2008) (long-term mortgage was excepted from discharge under 11 U.S.C. § 1328, so post-discharge collection actions by mortgage holder did not violate discharge injunction); also quoting *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 356, 365 (Bankr. S.D. Tex. 2008)).) The

---

[1] Defendants failed to state in their responsive pleading before the Bankruptcy Court whether they consented to the entry of final orders by the Bankruptcy Court. *See* Fed. R. Civ. P. 7012(b) (in adversary proceeding, "[a] responsive pleading shall include a statement that the party does or does not consent to entry of final orders or judgment by the bankruptcy court"). The Bankruptcy Court accordingly granted Defendants additional time to make their required statement, and explained that its Memorandum Opinion and Order would become final if Defendants consented and no party timely appealed, but would be treated as proposed findings of fact and conclusions of law under 28 U.S.C. § 157(c)(1) if Defendants did not consent. Defendants filed statements that they did not consent on October 13, 2017. (*See* Doc. 3-2 at 218–21.)

Bankruptcy Court noted that its conclusion was also based on the fact that Defendants had not made an argument under 11 U.S.C. § 524(i):

> Nor has Seterus or FNMA argued that 11 U.S.C. § 524(i) is applicable to this case. Section 524(i) provides that an act of a creditor to collect a debt remaining after a discharge because of a failure to credit payments as provided for in a plan is deemed to be a violation of the discharge injunction. Courts construing this section have applied it in situations where a debtor successfully completed a chapter 13 case, but a long-term home mortgage creditor refused to acknowledge that the loan was current and continued to pursue the claim. *See, e.g.*, *Ridley v. M&T Bank (In re Ridley)*, [572 B.R. 352 (Bankr. E.D. Okla. 2017)] . . . . Section 524(i) contains a number of factual predicates that must be shown before the court can determine whether it applies and the creditor's action is deemed to be a violation. The court presumes that the parties did not raise this section because either they do not have sufficient information to know whether it is applicable or they have the information and have decided for either factual or strategic reasons not to raise it.

(*Id.* at 14 n.4.)

The Bankruptcy Court went on to conclude that Count One of Plaintiff's Complaint, the objection to Seterus's claim, is a core proceeding, created by federal bankruptcy law, which the Bankruptcy Court may hear and determine. (*Id.* at 15–16.) It concluded that Counts Two through Six, while non-core claims, are nevertheless "related to" Plaintiff's bankruptcy case, such that the Bankruptcy Court has subject-matter jurisdiction to hear them. (*Id.* at 15–17.) It then analyzed Defendants' motions to dismiss for failure to state claims on which relief may be granted, concluding that the motions should be denied except as to Count Six, under the FDCPA, against FNMA. (*Id.* at 21–30.) It also concluded that Plaintiff should be given fourteen days to amend his Complaint to indicate whether he intends to assert that cause of action against FNMA. (*Id.* at 28–29.) Finally, the Bankruptcy Court addressed Defendants' motions to dismiss the class-action claims on the dual grounds that Plaintiff had not stated claims on his own behalf and the Bankruptcy Court would not have subject-matter jurisdiction over a nationwide class to enforce

5

discharge injunctions issued by other courts.  (*Id.* at 31.)  The Bankruptcy Court concluded the class-action claims should not be dismissed based, in part, on its previously stated reasoning regarding the discharge injunction.  (*Id.* at 30–34.)

Defendants objected to the Bankruptcy Court's proposed findings of fact and conclusions of law on October 27, 2017.  (*See* Doc. 3-2 at 240.)  Defendants objected only as to the Bankruptcy Court's proposed conclusion that it has subject-matter jurisdiction over Counts Two through Six and the class-action allegations.  (*Id.* at 230 & n.3.)  They do not object to the Bankruptcy Court's proposed conclusions as to subject-matter jurisdiction over the core claim in Count One or as to whether Plaintiff's various counts state claims on which relief may be granted.  (*See id.*)

The case was transferred to this Court on December 19, 2017.  (Doc. 1.)  Defendants filed their joint brief on January 29, 2018.  (Doc. 6.)  Plaintiff responded on February 2, 2018.  (Doc. 8.)  Defendants replied on March 13, 2018.  (Doc. 11.)  The Court heard oral arguments on July 18, 2018.  (Doc. 18.)

## II.  STANDARD OF REVIEW

A bankruptcy judge may hear a matter and submit proposed findings of fact and conclusions of law to the district court if the proceeding "is not a core proceeding but . . . is otherwise related to a case under title 11."  28 U.S.C. § 157(c)(1).  The district court may enter a final order or judgment "after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  *Id.*

Defendants have timely and specifically objected to the Bankruptcy Court's proposed conclusions on their motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure.  (*See* Doc. 6 at 7.)  When a defendant moves to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction.  *Davis v. United States*, 499 F.3d 590, 593–94 (6th Cir. 2007).  A Rule 12(b)(1) motion may present either a facial attack, which questions the sufficiency of the pleadings, or a factual attack, which challenges the factual existence of subject-matter jurisdiction.  *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994).  Defendants characterize their attack on jurisdiction as a factual one (Doc. 6 at 8), and Plaintiff does not disagree.  In assessing a factual challenge, the court must "weigh the evidence concerning jurisdiction presented by the parties and decide the jurisdictional facts."  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). The parties here have not pointed the Court to any evidence other than the allegations in the current pleadings and the filings in the Texas Case.

## III.  DISCUSSION

Defendants' position is that the causes of action in Plaintiff's Complaint seek to punish them for violating the Texas Court's discharge injunction, and therefore only the Texas Court has subject-matter jurisdiction.  This Court has performed a de novo review of Plaintiff's Complaint and the parties' briefing regarding what it alleges.  The Court has also reviewed de novo the Bankruptcy Court's analysis and the parties' arguments as to whether the loan was discharged for purposes of bringing a contempt action for violation of the discharge injunction.

### A. The Allegations in Plaintiff's Complaint

Each count of Plaintiff's Complaint incorporates by reference the previous allegations and briefly describes the specific claim. Defendants acknowledge that the counts themselves do not refer to a breach of the discharge injunction. (Doc. 6 at 14.) But they argue the incorporated allegations on which each count is based "are all grounded in the Texas bankruptcy court's orders." (*Id.* at 14–15.)

Defendants point first to the Complaint's allegation that one of Seterus's letters to Plainitff said "Plaintiff owed $3,000 in arrears not paid in his prior Chapter 13 case." (*Id.* at 14 (quoting Compl. ¶ 20).) Defendants cite no legal authority binding a plaintiff to a factual assertion in a letter from a defendant, merely because the plaintiff describes that letter in the complaint.

Defendants also point to the Complaint's multiple allegations about letters Plaintiff's counsel sent to Seterus claiming "that the foreclosure action is in direct violation of the Bankruptcy Order." (*Id.* (quoting Compl. ¶¶ 36, 61, 63, 67, 74, 76, 84).) These were statements Plaintiff's own counsel allegedly made before the Complaint was filed, when trying to persuade Defendants that they should not foreclose on Plaintiff's deed of trust. Similarly to the preceding argument, Defendants cite no legal authority binding Plaintiff to legal theories he advanced before the litigation was filed. On the contrary, even in pleadings, "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically." Fed. R. Civ. P. 8(d)(2). As Plaintiff argues, these are "seven paragraphs spread throughout the . . . Complaint," and multiple causes of action may be brought under a single set of facts. (Doc. 8 at 10.) Defendants have not shown Plaintiff is bound to the positions his counsel asserted in his letters to Defendants for purposes of the causes of action he may allege, no matter how many such letters there were.

Defendants next point to the allegations in Paragraphs 109 and 110 of the Complaint: that "[t]he actions of [Seterus] in failing to comply with the Order Confirming Debtor's Chapter 13 Plan entered in his Texas case no. 08-80227 are in grievous and flagrant disregard of the provisions of 11 U.S.C. § 1327(a)," and that Plaintiff "has not been able to begin his 'fresh start' upon completion of his Plan on May 31, 2013, due to the actions of the Defendants in failing to comply with the Order Confirming the Debtor's Chapter 13 Plan and properly crediting the Trustee's and Mr. Cawood's payments." (Doc. 6 at 14 (quoting Compl. ¶¶ 109, 110) (Defs.' emphasis omitted).) Neither of these paragraphs expressly alleges a violation of the discharge injunction.[2] They could, however, form part of the foundation for such a cause of action. Paragraph 110, for example, refers both to the Trustee's payments, which necessarily took place before the discharge, and Plaintiff's payments, which took place both one or two times before the discharge and for more than a year after the discharge. The Court accordingly considers Plaintiff's individual causes of action next.[3]

Count Two, for breach of contract, "alleges the Defendants breached the contract created between the parties by the loan documents, Deed of Trust, and subsequent assignments by commencing a foreclosure proceeding." (Compl. ¶ 117.) Defendants argue this must be a claim for violation of the discharge injunction and not for breach of contract, because Plaintiff did not

---

[2] Nor does the referenced section of 11 U.S.C. § 1327(a) expressly refer to the discharge injunction: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a).

[3] In the Bankruptcy Court, Defendants argued a lack of subject matter over Count One, Plaintiff's objection to Seterus's claim in this bankruptcy case, on the same grounds. Defendants have withdrawn from that position before this Court. (*See* Doc. 6 at 7–8 n.1.)

attach copies of the loan documents to the Complaint, and because Plaintiff did not identify specific sections of the loan documents Defendants violated. (Doc. 6 at 15; Doc. 11 at 6.) The Court disagrees. A pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Plaintiff has done that here. In the incorporated allegations, he has alleged that his loan was current as of May 2013 and that he made all of his subsequent payments, but that Defendants claimed he was in default and instituted foreclosure proceedings anyway. This is sufficient as "a short and plain statement" of facts showing Plaintiff is entitled to relief for breach of contract.

It is true that an order of the Texas Court forms the starting point of Plaintiff's allegation that he was current on the loan and had given no reason for Defendants to determine he was in default. But that does not stop Plaintiff's claim from being one for breach of contract. Rather, it is a way of explaining that Defendant's actions, declaring the loan to be in default and instituting the foreclosure process, were not justified by anything Plaintiff had done or failed to do. A debtor might, for example, allege he had made all loan payments on time since the beginning of the loan term, or had been behind, caught up, and then made all payments on time. Plaintiff here cannot allege he made all of his payments on time and therefore is not in breach, but he can and does allege he has made all of his payments on time since the Texas Case was completed and therefore is not in breach. Count Two asserts a cause of action for breach of contract, Plaintiff has included factual allegations that support such a cause of action, and Defendants' arguments that it is a disguised contempt action are not persuasive.

Count Three, for intentional or negligent misrepresentation, alleges Defendants made false representations by telling Plaintiff his loan was in default, publishing the foreclosure sale,

10

objecting to confirmation of Plaintiff's plan by alleging he was in default, and ignoring requests for an accounting. (Compl. ¶¶ 119–22.) Defendants argue "[e]very alleged misrepresentation is grounded in the default that [Plaintiff] alleges resulted from the failure to reflect his loan as current as required by the Texas bankruptcy court." (Doc. 6 at 15.) This argument fails for the same reasons the Court explained as to Count Two.

Count Four, for negligence, alleges "Defendants negligently failed to properly correct its (sic) accounting records to reflect that the Plaintiff was current on his mortgage upon the completion of [the Texas Case]." (Compl. ¶ 125.) Defendants argue that Count Four "facially ties to the orders of the Texas Bankruptcy Court," and is "premised on the idea that Seterus was obligated to correct its record based on the Texas Bankruptcy Court proceeding." (Doc. 11 at 8.) In his response, Plaintiff argues Defendants' negligent handling of his account is clear from Defendants' months of statements that it was investigating Plaintiff's account and would explain the results, which it never did. (Doc. 8 at 12.) This does not, however, explain how the description of Defendants' negligence in Count Four is for something other than the failure to obey the Texas Court's orders. Plaintiff also argues it is clear Defendants "hatched a scheme" to target individuals recently released from Chapter 13 bankruptcies for foreclosure. (*Id.*) As Defendants point out, "schemes" involve intentional actions, not negligent ones. (Doc. 11 at 8.) This argument also does nothing to separate Plaintiff's allegation of wrongdoing from the Texas Court's orders. Last, Plaintiff argues that Defendants did not become interested parties in Plaintiff's mortgage until after the Texas Case was complete, so their alleged negligence could not have had anything to do with the Texas Court's orders. (Doc. 8 at 12.) Defendants are correct, however, that they may be held liable for contempt even though they were not interested parties while the Texas Case was going

on. (*See* Doc. 11 at 5 (citing *In re Stubbs*, 565 B.R. 115, 125 (B.A.P. 6th Cir. 2017).) Count Four could be read to allege a violation of the discharge order. The Court will therefore consider it further in the following section, regarding whether Plaintiff's loan was included in the discharge injunction.

Count Five, for failure to credit payments on receipt in violation of 15 U.S.C. § 1639f, alleges on information and belief that "SunTrust and Seterus failed to credit payments to Plaintiff's account as of the date of receipt for the purpose of assessing late charges to the account." (Compl. ¶ 130.) Count Six, for violation of the FDCPA, alleges Defendants "demanded an amount from Plaintiff which is inaccurate and inflated, and in violation of any contract between the parties." (*Id.* ¶ 138.) Count Six also lists specific actions that allegedly violated specific provisions of the FDCPA. (*Id.* ¶ 139–40.) Defendants allege these counts "also arise out of [Defendants'] alleged failure to credit [Plaintiff] in accordance with the Texas bankruptcy court's order." (Doc. 6 at 15.) This argument fails for the same reasons the Court explained as to Count Two.

### B. Whether the Loan Was Included in the Discharge Injunction

The Bankruptcy Court reasoned that Plaintiff's Complaint cannot be for violation of the discharge injunction because the loan at issue was not discharged, relying on *Perry* and *Rodriguez*. (Op. at 11–14.) In *Perry*, a discharged bankruptcy debtor brought an adversary proceeding against her mortgage creditor for violations of the discharge injunction, alleging that the creditor had been refusing her maintenance payments. 388 B.R. at 334. The *Perry* court explained that "a debtor's discharge triggers the 'discharge injunction' which 'operates as an injunction against the commencement or continuation of . . . an act[] to collect, recover or offset any . . . debt as a personal liability of the debtor . . . ." *Id.* at 335 (quoting 11 U.S.C. § 524(a)). The discharge

12

injunction thus prevents a creditor with a prepetition claim from trying to hold the debtor personally liable for the debt. *Id.* at 335–365. The *Perry* court further explained that "[t]he discharge injunction is limited . . . to debts that are actually discharged," but the statute governing a Chapter 13 discharge "except[s] any debt" as to a "secured claim on which the last payment is due after the date on which the final payment under the plan is due." *Id.* at 336 (quoting 11 U.S.C. §§ 1328(a)(1) & 1322(b)(5)). This exclusion from discharge applies to ongoing mortgage obligations. *Id.* (citing *In re Chess*, 268 B.R. 150, 153 (Bankr. W.D. Tenn. 2001)). The *Perry* court accordingly concluded that it did "not have subject matter jurisdiction over any post-discharge dispute over the Debtor's mortgage obligation." *Id.* at 337.

Defendants attempt to distinguish *Perry* because it involved a post-discharge dispute, rather than a pre-discharge dispute. (Doc. 6 at 13, 19–20.) There are two problems with Defendants' argument. First, as discussed in the preceding section, Plaintiff has sufficiently alleged multiple causes of action regarding a post-discharge dispute regarding Plaintiff's loan payments. Second, as the Bankruptcy Court noted, "Defendants do not address *Perry's* holding that a debt that was not discharged does not give rise to a discharge injunction violation." (Op. at 12.) Defendants still do not address that holding, other than to say they disagree with the Bankruptcy Court's characterization of it. (Doc. 6 at 20 n.4.) Instead, they point to other cases that appear to reach a different conclusion.

Those cases, however, are not applicable here. In *Beiter v. Chase Home Finance, LLC*, 554 B.R. 433 (Bankr. S.D. Ohio 2016), for example, the court discussed the discharge injunction in the context of a mortgage loan, but never analyzed whether the mortgage debt was discharged. *See id.* at 437. In *Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319 (S.D. Fla. 2014) the

13

plaintiff's "personal liability for her home mortgage loan was discharged" during the bankruptcy case, distinguishing the case from the factual situation here. *Id.* at 1329 n.7. Other cases on which Defendants rely were decided under 11 U.S.C. § 524(i). (*See, e.g.*, Doc. 6 at 16 (citing *Ridley v. M&T Bank*, 572 B.R. 352, 360–61 (Bankr. E.D. Okla. 2017).) Defendants correctly quote *Ridley* as stating that "if a creditor fails to properly credit payments made under a confirmed plan, § 524(i) treats such conduct as a violation of the discharge injunction even if the underlying debt is not discharged." 572 B.R. at 360–61. *Ridley* goes on to discuss the factual predicates of § 524(i), which Defendants do not address. Nor have Defendants themselves made any argument under § 524(i), despite the Bankruptcy Court's explanation that it presumed Defendants had not argued under § 524(i) either because they do not know "whether it is applicable or they . . . have decided for either factual or strategic reasons not to raise it." (Op. at 14 n.4.) This Court is in the same position as the Bankruptcy Court; it cannot assess factual predicates Defendants have failed to bring before it.

The *Rodriguez* court, the same district as the Texas Court, followed reasoning similar to the *Perry* court's in holding that a debtor could not pursue a cause of action for violation of the discharge injunction because the debtor's mortgage loan was not discharged. 421 B.R. at 365–66. Defendants' attempt to distinguish *Rodriguez* is even less persuasive than its attempt to distinguish *Perry*. Defendants merely point out that the *Rodriguez* "court expressly recognized the debtors' rights to pursue claims that a mortgagee/servicer violated their bankruptcy plans and the orders confirming their plans." (Doc. 6 at 21 (citing *Rodriguez*, 421 B.R. at 369).) The language Defendants quote, however, appears in the *Rodriguez* court's assessment of a different cause of action, after the court dismissed the plaintiff's cause of action for violation of the discharge

14

injunction based on an analysis similar to *Perry*'s. *See Rodriguez*, 421 B.R. at 365–66, 369. The Court accordingly concludes that Plaintiff's case does not involve a discharge injunction, and Plaintiff's causes of action, including Count Four, are not disguised attempts to punish Defendants for violations of the discharge injunction.

IV. **CONCLUSION**

The Court will **ACCEPT** the Bankruptcy Court's proposed findings of fact and conclusions of law,[4] **DENY** Seterus's motion to dismiss, **GRANT IN PART** and **DENY IN PART** FNMA's motion to dismiss, **DISMISS** Count Six of Plaintiff's Amended Complaint against FNMA, and **REMAND** the case to the Bankruptcy Court for further proceedings consistent with this opinion.

**An appropriate order will enter.**

/s/
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**

---

[4] For the avoidance of doubt, this includes the Bankruptcy Court's conclusion that Plaintiff should be given fourteen days to amend his Complaint to indicate whether he intends to state a claim against FNMA in Count Five.